**In the Matter of Kenneth Leroy WALLER, Bankrupt,**

**Madeline R. WALLER, Appellant,**

v.

**Kenneth Leroy WALLER, Appellee.**

**No. 73–1609.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1974.

Decided April 10, 1974.

Edward J. Maher, Maher & Widder Co., Cleveland, Ohio, for Madeline R. Waller.

David J. Richards, Jr., Dworken & Bernstein Co., Painesville, Ohio, for Kenneth L. Waller.

Before WEICK, EDWARDS and PECK, Circuit Judges.

WEICK, Circuit Judge.

The controvery in this case arose in the Bankruptcy Court, where the bankrupt, Kenneth Leroy Waller, a ex-hus-

band of appellant, Madeline R. Waller, petitioned the Bankruptcy Court to re-open his previously-closed bankruptcy case, and to enjoin his ex-wife from enforcing a decree of the Common Pleas Court of Cuyahoga County, Ohio, Domestic Relations Division, which decree granted to her a divorce and custody of their six and one-half year old son and adopted and made a part of the decree a separation agreement previously entered into by the parties providing for alimony, maintenance, support and division of property.

The part of the separation agreement (now an order of the Common Pleas Court) of which the bankrupt sought to enjoin enforcement, provides in paragraph (6), under the heading "Prior Debts", the following:

> . . . The husband shall pay and indemnify and hold the wife absolutely harmless from all existing obligations.

Among the marital debts which the Common Pleas Court had ordered Waller to pay was an open account owing to King Furniture Company of Cleveland, Ohio, for household furniture which was awarded by the Court to the wife in the division of property and which was in her possession and was being used by her for herself and for her minor son in the household which she maintained.

Waller had neglected to pay the furniture bill and when he voluntarily went into bankruptcy less than three months after the divorce, he listed in his schedules as an unsecured creditor, the King Furniture Company, in the amount of $1,951.72. He did not list his ex-wife as a creditor, and there was no proof offered and no claim was made that she knew of his bankruptcy.[1]

Waller received a discharge in the bankruptcy proceeding and the case was closed.

King Furniture Company then sued Mrs. Waller in the Municipal Court of Cleveland, to recover the balance owing for the furniture in the amount of $2,273.84. Mrs. Waller filed a third party complaint in the Municipal Court of Cleveland against Waller, seeking to compel him to pay the bill. She also filed in the Common Pleas Court of Cuyahoga County a motion to require Waller to show cause why he should not be punished for contempt for violation of the Court's decree.

The Bankruptcy Judge, in an *ex parte* order, reopened the bankruptcy case and granted a temporary injunction restraining the enforcement of the decree. Thereafter he made the injunction permanent. On review, the District Court affirmed. We reverse.

It was the theory of the bankrupt, adopted by the Bankruptcy Judge, that the award of the household furniture to the wife and the order requiring him to pay all marital debts and indemnifying his ex-wife therefrom, was merely division of property and did not constitute alimony, maintenance or support under Ohio law, and therefore it was dischargeable in bankruptcy.

Mrs. Waller contended that the division of property and the order requiring her husband to pay the marital bills was ". . . alimony due or to become due, or for maintenance or support of wife or child." 11 U.S.C. § 35(a)(7) (1970).

The law of Ohio must be resorted to in order to determine what constitutes alimony, maintenance or support. Desjardins v. Desjardins, 193 F.Supp. 210,

---

1. The Bankruptcy Judge was of the opinion that it was unnecessary for the bankrupt to list his ex-wife as a creditor in his schedules. This view runs counter to 11 U.S.C. § 25(a)(8) which requires the listing of "contingent, unliquidated, or disputed claims. . . ."

In the bankrupt's "Statement of Affairs", filed with his schedules, the following question was asked under Item 8:

Have you been party plaintiff or defendant in any suit within the year preceding the filing of the original petition herein? The bankrupt's answer under oath to this question was "None". This answer was false as he was party defendant in the divorce case less than three months before his bankruptcy.

213 (E.D.Ky.1961), modified and aff'd, 308 F.2d 111, 115–116 (6th Cir. 1962).

It is significant that no Ohio case has been cited to us holding that such an award and indemnity did not constitute alimony.

The case closest in point to the present case is Collins v. Smith, 26 Ohio Misc. 231, 270 N.E.2d 377 (C.P.Scioto 1971), where the personal property awarded to the wife was mortgaged and the husband had agreed to hold harmless his wife from any debts or obligations outstanding. The Court held:

> We concur with the Seventh District Court of Appeals which took the position that a nearly identical provision constituted an award of alimony, and the obligation to save harmless cannot be discharged in bankruptcy. Fredericks v. Fredericks, Ohio App., 146 N.E.2d 153, 76 Ohio Law Abst. 296. (*Id.* at 378)

In *Collins* the divorce decree specifically characterized the award of furniture as alimony, but did not so characterize the indemnity agreement.

The fact that in *Collins* the personal property was mortgaged, whereas in the present case the debt was an open account, would seem to be immaterial. It is a distinction without a difference.

The Bankruptcy Judge was of the view that under Ohio law the order to pay the marital debts and to indemnify the wife therefrom, could be considered as alimony *only* in two situations:

> . . . [W]here (1) the hold harmless agreement is directed specifically to the payment of liens upon property, which property itself has been awarded as alimony, or (2) where certain debts have been designated specifically as alimony within the decree, and these debts are themselves directed to the support of the wife or child.

We have found no case in Ohio holding that only in these two situations can the award be considered as alimony.

The Bankruptcy Court stated that in Ohio,

> Alimony may comprise property where that property is set aside for the specific and definate [sic] purpose of supporting and maintaining the wife.

The Bankruptcy Court cited Desjardins v. Desjardins, 193 F.Supp. 210 (E.D. Ky.1961), as authority for this proposition.

The Bankruptcy Court then focused on this "specific and definite purpose" designation as the criteria for distinguishing "alimony" from "property settlement." The Court felt that unless an award of property in a divorce decree, or the division of property in a separation agreement later incorporated into a divorce decree, specifically designated such award or division of property as "alimony," it was just a "property settlement," and therefore it was not within the exception to discharge under Section 17(a) of the Bankruptcy Act. (11 U.S.C. § 35(a)(7).)

The Court then went on to find that in this case—

> . . . [I]t seems clear that such phrase [Paragraph (6)] applies not as alimony but merely as property settlement.

Thus the Court found the bankrupt's obligation to the appellant was dischargeable.

In our opinion it is not necessary for a divorce court in Ohio to state specifically whether an award which it makes to a wife is alimony. We are of the view that this is too narrow an interpretation of the Ohio law, and is erroneous. Suppose, for example, the divorce court had ordered Waller to provide household furniture in the living quarters of his wife and child; is there any doubt about the fact that this would constitute "alimony . . . . or for maintenance or support of wife or child" within the meaning of 11 U.S.C. § 35(a)(7) (1970)?

This being true, we submit there is no difference between such an order and one requiring the husband to pay for furniture which he had already pur-

chased for his family, but for which he had not paid.

Ohio Revised Code § 3105.18 provides for alimony as follows:

> The court of common pleas may allow alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either, at the time of the decree.

> Such alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.

The statutory definition of alimony is indeed very broad and includes an allowance in real or personal property, or both, as well as in money. There is no provision in the statute that an award of property must be designated specifically as "alimony", or that otherwise it will be considered "merely property settlement," and not alimony. In fact, just the opposite is true. The intent of the separation agreement which became an order of the Court was clear that the wife was to receive the personal property awarded to her without any strings attached thereto, and without having it taken away from her by her husband's marital creditors, which debts he agreed to pay and against which he indemnified her.

In Fickel v. Granger, 83 Ohio St. 101, 93 N.E. 527 (1910), the Supreme Court of Ohio held:

> Alimony . . . is an award by the court upon consideration of equity and public policy and is founded upon the obligation, which grows out of the marriage relation, that the husband must support his wife, which obligation continues after legal separation without her fault. (Syl. 1)

In Durham v. Durham, 104 Ohio St. 7, 135 N.E. 280 (1922), the Supreme Court of Ohio stated in regard to alimony:

> It must be confessed that the Legislature has used the term in a more ex-tensive sense than defined by the lexicographers or the courts. (p. 10, 135 N.E. at p. 280)

Later the Court stated:

> In divorce the trial court is given a wide latitude of discretion in the allowance of what the statute terms alimony . . . . (p. 11, 135 N.E. at p. 281)

In Popp v. Popp, 85 Ohio St. 470, 471, 98 N.E. 1131 (1911), the Supreme Court of Ohio by order reversed the Court of Appeals for "holding that such division of property was not alimony." *See also* Kadel v. Kadel, 21 Ohio Misc. 232, 250 N.E.2d 420, 49 Ohio Op.2d 179 (C.P. Clark 1969); Reed v. Reed, 20 Ohio Law Abst. 491 (Ct.App. Franklin 1935); Collins v. Smith, 26 Ohio Misc. 231, 270 N.E.2d 377 (C.P. Scioto 1971); Fredericks v. Fredericks, 76 Ohio Law Abst. 296, 146 N.E.2d 153 (Ct. App. Columbiana 1956).

In Desjardins v. Desjardins, *supra*, the case relied on by the Bankruptcy Court for distinguishing alimony from a property settlement, District Judge Mac Swinford, in determining Ohio law, stated:

> The Ohio courts regard the term "alimony" as synonymous with a division of the property belonging to the parties at the time of separation and hold that decrees approving such agreements are not subject to modification. (193 F.Supp. at 213)

This Court, in Avery v. Avery, 114 F.2d 768, 770 (6th Cir. 1940), has previously stated:

> There is no peculiar sanctity surrounding the words "property settlement." Bankruptcy courts sit in equity . . . and have power "to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." (*Id.* at 770).

Waller's promises contained in paragraph (6) of the separation agreement were surely made with the knowledge of the debt outstanding to King Furniture Company, for he listed the debt on his

bankruptcy schedules less than three months later. He also knew of his obligation under the divorce decree to pay the furniture bill and to indemnify his wife therefrom; yet he neglected to list her as a creditor in his bankruptcy schedules and she received no notice of the bankruptcy proceeding.

In light of the statute, history, and the Court decisions, and taking into account the circumstances of the claim, we hold that Waller's obligation to his former wife to "pay and indemnify and hold the wife absolutely harmless from all existing obligations" constituted alimony, maintenance and support for the wife or child, and was a debt not dischargeable in bankruptcy by reason of the exception to discharge in 11 U.S.C. § 35(a)(7).[2]

We also note that the Bankruptcy Court did not rule on the question whether the bankrupt's obligation to his former wife was discharged because she was not listed as a creditor, she was not sent notice of the bankruptcy proceeding, and there was no proof offered that she ever had knowledge of his bankruptcy proceeding. *See* 11 U.S.C. § 35(a)(3). Had the Court ruled on this issue, which is peculiarly a federal question, there may have been no necessity for it to decide what constitutes alimony, maintenance or support under Ohio

law, which is a question more properly to be decided by Ohio Courts.

The Bankruptcy Court felt such a decision was not required by reason of its holding that such a claim on the part of the former wife was not yet mature. The Bankruptcy Court noted that under Ohio law there is a distinction between an agreement to indemnify against loss and an agreement to indemnify against liability. *See* Henderson-Achert Lithographic Co. v. John Shillito Co., 64 Ohio St. 236, 254, 60 N.E. 295 (1901). Under the former a right does not accrue until damage or loss is incurred, while under the latter such loss or damage is not a prerequisite.

The Bankruptcy Court held that paragraph (6) of the agreement "reads . . . as an agreement to indemnify against loss as distinguished from an agreement to indemnify against liability." The Court then determined the former wife's claim was not mature since she had not "sustained damage, loss, or at least has suffered judgment indicating an adjudication of her liability." In other words, the wife was required either to suffer judgment or to pay her former husband's obligation before obtaining any relief in the Bankruptcy Court.[3]

Once again we disagree with the Bankruptcy Court as to the proper inter-

---

2. When the furniture was originally purchased on open account it was certainly regarded as necessary for the maintenance and support of the family, which necessity was the obligation of Waller to provide. To relieve him now of this obligation through bankruptcy could result in the seizure of the furniture from the home of his wife and child. Reliance of the Bankruptcy Judge on Schwoll v. Meeks, 76 Ohio App. 231, 63 N. E.2d 831 (1944), is misplaced as that case did not involve a divorce decree providing for maintenance and support of a wife or child. Nor is Addison v. Addison, 95 Ohio App. 191, 118 N.E.2d 225 (1953), applicable as that case involved a money judgment for a debt which was not alimony. The separation agreement provided in paragraph (9) that even attorney's fees for services rendered to the wife in connection with the agreement or in any divorce or alimony action now pending or hereafter commenced

shall be considered as additional alimony to the wife.

3. It would have been foolhardy for the wife to pay her former husband's debt, liability which she disputed, particularly since the schedules filed by her husband in the Bankruptcy Court showed no assets available for payment of unsecured creditors totaling $7,556.71, which debts were solely for merchandise purchased. All obligations of the husband, plus a partially-secured claim ($3,247 on his automobile worth $1,000) have been discharged in bankruptcy. Not being satisfied with all of this the bankrupt sought the aid of the Bankruptcy Court to relieve him of his obligation under the divorce decree to pay for the household furniture which he had purchased for his family, and, if successful, it might result in the furniture being taken away from the wife.

pretation of the agreement under applicable Ohio law.

Paragraph (6) of the agreement states:

> The husband shall pay and indemnify and hold the wife *absolutely* harmless from all existing *obligations.* (Emphasis added.)

■ Nowhere in the agreement is "loss" mentioned; instead, there are promises to pay, to indemnify and to hold the wife *absolutely* harmless from existing marital obligations. This terminology is more consistently interpreted as an indemnity against liability, not loss, and therefore the former wife's claim was sufficiently mature for her to seek relief. *See* Wilson v. Stilwell, 9 Ohio St. 467 (1859); Martin v. Bolenbough, 42 Ohio St. 508, 514–515 (1885); 41 Am.Jur.2d Indemnity § 1 (1968).

■ The 1970 amendment to the Bankruptcy Act increased the jurisdiction of the Bankruptcy Courts in order "to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors." H.R.Rep.No.91–1502, 91st Cong., 2d Sess. 2, U.S.Code Cong. & Admin.News, p. 4156 (1970). The wife was not an harassing creditor. Inasmuch as the Bankruptcy Court may now render null and void judgments of state courts dealing with the personal liability of a bankrupt (11 U.S.C. § 32(f)), that Court should act with caution in order not to abuse the balance between the state and federal relationship.

It is pertinent to note in regard to a husband's liability for maintenance and support for his wife and family, from which alimony, maintenance and support spring, that the Supreme Court of the United States had established an exception to discharge of debts for such a liability even before the Bankruptcy Act was amended specifically to make this an exception from discharge. Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 49 L.Ed. 390 (1904).

The judgment of the District Court affirming the Bankruptcy Court is reversed, and the cause is remanded with instructions to dissolve the injunction and to dismiss the complaint.